**Melvin Charles DISHMON,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent–**
**Respondent.**

No. 28361.

Missouri Court of Appeals,
Southern District,
Division Two.

March 27, 2008.

Gwenda R. Robinson, District Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Melvin Charles Dishmon ("Movant") appeals the motion court's denial of his Rule 29.15 [1] motion for post-conviction relief which alleged ineffective assistance of counsel, specifically arguing (1) that he was involuntarily coerced by his trial counsel into waiving his right to a jury trial; and (2) that he was prejudiced by trial counsel's improper questioning of Movant

---

1. All references to Rules are to Missouri Court Rules (2005).

at trial regarding the details of Movant's prior aggravated assault conviction. Because Movant's complaints were born out of reasonable trial strategy, trial counsel was not ineffective. We affirm.

### Factual Background[2]

Movant and Gloria Cole ("Cole") lived together. On June 4, 2004, Cole arrived at the house of her friend, Francine Clark ("Clark"), and told her that Movant had hit her. Later that afternoon, Movant arrived at Clark's house looking for Cole. Cole told Movant that she wanted him to "get his stuff" and get out of her house. Johnny Bowen ("Bowen") and Dewayne Anthony ("Anthony") were at Clark's house, and they started walking with Movant toward Cole's house. As they were walking, Anthony and Bowen hit Movant and knocked him down.

Movant stood up, started walking away and was eventually stopped by Kennett Police Officer Jeremy Yates ("Officer Yates"). Officer Yates had received a dispatch regarding an "unwanted guest," who matched the description of Movant, at Clark's house. Officer Yates advised Movant not to return to Clark's house and then released him.

Later that night, Movant approached Cole's house where Bowen was sitting on the porch. Movant approached Bowen and accused him of being one of the people that hit him earlier in the evening. Movant confronted Bowen and used a box cutter to repeatedly stab him; he fled from the scene after stabbing Bowen approximately ten or eleven times. The attack left Bowen with scars on his face and neck,

the loss of sight in his left eye, and a loss of hearing. He also suffered nerve damage and speech problems.

Kennett Police Officer Mark Dennis ("Officer Dennis") arrived at the scene of the crime and was given a description of Movant. Officer Dennis was searching for Movant when he saw an individual running through an open field near the scene of the crime. Officer Dennis was unable to catch the fleeing individual, but he contacted Officer Yates and advised him that he saw a suspect running through the field. Officer Yates started running after the suspect and, when he caught him, ordered the suspect to stop. Officer Yates did not recognize the suspect as Movant at that point. After Movant stopped running, Officer Yates placed Movant in handcuffs for his own protection and asked Movant why he was running. Movant answered by saying that "he just cut up a boy." Officer Yates, again fearing for his own safety, inquired as to whether Movant still had the weapon on him. Movant answered by saying that he used a box cutter but had thrown it down.

Movant was charged with first-degree assault, pursuant to section 565.050,[3] and armed criminal action, pursuant to section 571.015.

Six days before the start of his scheduled jury trial, Movant signed a waiver of his right to a jury trial and filed it with the trial court. The next day during a pretrial conference, the trial court questioned Movant regarding his choice of a bench trial over a jury trial, informed him that he had a right to force the State to convince a

---

**2.** In *State v. Dishmon*, No. SD27162, this court issued its written order on June 14, 2006, affirming without opinion Movant's judgment of conviction on the offenses giving rise to his motion for post-conviction relief. Attached to that order was a written statement by the court directed to the parties

setting out the basis for the court's decision. *See* Rule 84.16(b). In this opinion, we borrow freely from that written statement without any further attribution.

**3.** All references to statutes are to RSMo 2000.

jury unanimously of his guilt, inquired as to any discussions occurring between Movant and counsel regarding his choice of a bench trial, and informed Movant of the trial court's ability to consider the full range of punishments available should the trial court find Movant guilty. At that time, Movant stated that he understood the extent of his rights and still wished to waive his right to a jury trial and proceed with a bench trial. The trial court further inquired as to the existence of any coercion or promises regarding Movant's choice; Movant denied that counsel had in any way undermined the validity of Movant's individual decision to waive his right to a jury.

At trial, Movant testified that he acted in self-defense against Bowen, claiming that he attacked Bowen because Movant was afraid of him, as Bowen had assaulted Movant earlier in the evening. During Movant's direct examination, counsel asked about a prior aggravated assault conviction Movant had incurred while a teenager; Movant explained that his mother's boyfriend had come at him with a knife and, in his own defense, Movant shot him in the hip to stop the attack. Movant also mentioned another incident involving his being attacked with a knife in 1992, and asserted that, as a result, he had a heightened fear of knives.

The trial court found Movant guilty of both first-degree assault and armed criminal action. Thereafter, Movant received concurrent twenty-year and ten-year sentences on the charges, respectively. Movant filed a direct appeal of his conviction, and this court affirmed his judgment of conviction. *See State v. Dishmon*, No. SD27162, memo. op. (Mo.App. June 14, 2006). Movant timely filed a Rule 29.15 motion for post-conviction relief alleging, among other things, that his trial counsel was ineffective for coercing Movant into waiving his right to a jury trial and for eliciting from Movant during his trial testimony the details surrounding Movant's prior conviction for assault. Counsel was appointed for Movant, and an amended motion was thereafter timely filed.

At the evidentiary hearing on Movant's amended motion for post-conviction relief, both Movant's primary trial counsel and trial counsel's supervisor testified that, during conversations with Movant before trial, it was their recommendation that Movant waive a jury trial. These recommendations were based on the likely makeup of the jury, the potential difference in sentencing if imposed by the trial court as opposed to a sentence recommended by a jury, and the State's strong case against Movant. Movant's trial counsel testified that he did not attempt to coerce Movant into waiving his right to a jury. Trial counsel additionally testified that his reasoning for going into detail on Movant's prior conviction was to reinforce Movant's defense of self-defense in the current case and to blunt its prejudicial effect; specifically, counsel stated that he thought the details of the past offense—namely, that Movant shot his mother's boyfriend in self-defense after being attacked with a knife, and subsequently pleaded guilty to aggravated assault—would both support Movant's current claim of self-defense by demonstrating Movant's heightened sensitivity to knives, and lessen the prejudicial effect of simply informing the court that Movant had previously been convicted of aggravated assault without explaining the self-defense aspect of that crime.

The motion court, thereafter, issued findings of fact and conclusions of law denying Movant's motion on all issues. Movant now appeals.

### Standard of Review

In reviewing appeals of Rule 29.15 motions for post-conviction relief alleging in-

effective assistance of counsel, this court is limited to a determination of whether or not the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Glass v. State,* 227 S.W.3d 463, 468 (Mo. banc 2007). The "[f]indings and conclusions [of the motion court] are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000). It is incumbent upon the movant in a post-conviction motion to prove his claims for relief by a preponderance of the evidence. Rule 29.15(i).

### Discussion

In order to prevail on a claim of ineffective assistance of counsel, a defendant must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel's actions were competent, and it is the defendant's burden to overcome that presumption. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2007). Generally, courts "should refrain from employing hindsight when reviewing counsel's conduct at trial." *State v. Williamson,* 877 S.W.2d 258, 262 (Mo. App.1994). Additionally, a defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. If a movant fails to satisfy either the performance prong or the prejudice prong of the *Strickland* test, relief will be denied. *Lawrence v. State,* 160 S.W.3d 825, 829 (Mo.App.2005).

### Waiver of Jury Trial

■ Movant's first point asserts that the motion court clearly erred in finding that Movant's trial counsels "did not pressure movant, or coerce or improperly induce him, to waive a jury."

■ The right to a jury trial is a fundamental right, guaranteed to defendants by both the Sixth and Fourteenth Amendments of the federal Constitution, and Article I, sections 18(a) and 22(a) of the Missouri Constitution. Section 22(a) of the Missouri Constitution provides that "in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury." In felony cases, that waiver must be in open court and entered into the record. Rule 27.01(b). Any waiver of a jury trial must be knowing, voluntary, and intelligent, and must be present in the record with "unmistakable clarity." *State v. Baxter,* 204 S.W.3d 650, 653 (Mo. banc 2006).

In paragraph 8(a)(2) of his amended motion for post-conviction relief, Movant alleged that "[t]rial counsel was ineffective for pressuring [Movant] to unknowingly, unintelligently and involuntarily waive his right to a jury trial."

The motion found that Movant failed to carry his burden of proving ineffective assistance of counsel on this issue by failing to satisfy the performance prong of the *Strickland* test. As the motion court noted,

> At first, movant wanted a jury trial. But, after his trial attorneys advised him of the advantages and disadvantages of a jury trial and a bench trial, he waived a jury upon the advice of his attorneys. His written waiver, and the oral waiver made in open court, appear of record with unmistakable clarity. The trial attorneys were credible, and the court finds that they did not pressure movant,

or coerce or improperly induce him, to waive a jury. Movant waived a jury knowingly, intelligently, and voluntarily[.]

 In support of this finding, the motion court had before it Movant's own testimony prior to trial that his attorneys did not coerce him in any way to waive a jury trial, as well as the motion hearing testimony of both trial counsels asserting that Movant was apprised of his right to a trial by jury and the advantages and disadvantages of utilizing that right, and that Movant made an informed decision based on that information. In fact, the only evidence Movant presented to the motion court in support of this allegation in his amended motion was his own testimony—contradicting that from prior to trial—that he was coerced by his trial counsels into waiving his right to a jury trial. We must defer to the judgment of the motion court when it comes to determinations of credibility of witnesses. *State v. Johnson,* 207 S.W.3d 24, 44 (Mo. banc 2006). The motion court in this case expressly found Movant's trial counsels to be credible and implicitly disbelieved Movant's motion hearing testimony. "On a claim of ineffective assistance of counsel, 'the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, including the movant's testimony[.]' " *Berry v. State,* 225 S.W.3d 457, 461–62 (Mo.App.2007) (quoting *Krider v. State,* 44 S.W.3d 850, 858 (Mo.App.2001)).

At the motion hearing, Movant's trial counsels testified that they advised Movant to waive his right to a jury. Lead trial counsel explained that various factors led him to advise Movant to waive a jury. Trial counsel knew that Movant wanted to testify in support of his claim of self-defense, and, accordingly, counsel knew that Movant's criminal history would be revealed to the finder of fact. Trial counsel

believed that Movant's prior conviction for an aggravated assault would be very prejudicial in the eyes of a jury, and that was the "main factor" that led counsel to advise Movant to waive his right to a jury. This advice was reasonable. *See Morton v. State,* 718 S.W.2d 607, 610 (Mo.App.1986) (counsel's advice was reasonable because "[i]f defendant had elected to testify in a jury trial of the robbery case, his past criminal conduct, in the form of his prior convictions, could have been introduced into evidence for impeachment purposes"); *see generally Smith v. State,* 837 S.W.2d 25, 27–28 (Mo.App.1992) ("The decision to waive a jury trial in this case was a matter of trial strategy and consequently does not provide a basis for post conviction relief.").

Trial counsel testified that he was also concerned with other factors, including the potential sentence that could be imposed if Movant was found guilty. Given the strength of the State's case, trial counsel believed that there was a strong likelihood that Movant would be found guilty. Thus, he also advised—based on his knowledge and experience of the trial judge's sentencing practices—that Movant should waive his right to a jury and leave the sentencing in the trial judge's hands. Trial counsel did not guarantee a lesser sentence from the trial judge, but in counsel's experience, the trial judge tended to be more lenient than Dunklin County juries. This, too, was reasonable advice. *See generally Strickland,* 466 U.S. at 695, 104 S.Ct. 2052 (in selecting strategies, it is reasonable to consider "propensities toward harshness or leniency" on the part of the decision-maker).

In addition, in discussing these various factors with Movant, trial counsel advised Movant about the differences between a jury trial and a bench trial. In so doing, trial counsel also informed Movant what to expect in terms of the people who would

be. seated on the jury. Trial counsel explained that he always tells his clients what the jury "is going to look like," including racial composition, so that the client will have a better understanding of what he is either giving up or getting into. He pointed out that it is important for a defendant to understand that jurors in Dunklin County "tend to be middle aged, older, always have been employed, and have never been in any trouble." Trial counsel explained to Movant that it was important to understand that most jurors (unlike judges) have little contact with felons, and that, accordingly, they can "have difficulty understanding a criminal defendant." Movant's other trial attorney echoed this testimony and pointed out that she also had a practice of informing her clients that the jury will not be entirely composed of jurors of the same race. Indeed, in Dunklin County, Movant's second-chair counsel explained, juries are sometimes composed entirely of Caucasian jurors or mostly Caucasian jurors with one or two African–American jurors. Such advice is reasonable.

Movant's reliance on *Luster v. State*, 10 S.W.3d 205 (Mo.App.2000); *People v. Smith*, 326 Ill.App.3d 831, 260 Ill.Dec. 462, 761 N.E.2d 306 (2001); *People v. Browne*, 220 A.D.2d 313, 632 N.Y.S.2d 785 (N.Y.App.1995); and *City of Wichita v. Bannon*, 37 Kan.App.2d 522, 154 P.3d 1170 (Kan.2007), in support of his position that counsels' actions were ineffective, is misplaced. Although the movant in *Luster* alleged that he was never informed that he even had a right to a jury trial, the motion court denied movant's motion without an evidentiary hearing, and the Western District of our court merely remanded the case for such a hearing. *Luster*, 10 S.W.3d at 212. In the case at bar, Movant was afforded an evidentiary hearing, and credible substantial evidence was presented that Movant was informed by both trial counsels and the trial court of his fundamental right to a jury and that he knowingly, intelligently, and voluntarily waived it.

The remaining cases cited by Movant are similarly distinguishable. In *Smith*, the defendant's trial counsel made illusory promises and gave the defendant false information in order to persuade the defendant to waive a jury trial, namely that the judge in that case owed counsel a favor and would be privy to sensitive information unavailable to the jury. *Smith*, at 838, 761 N.E.2d 306. In the case at bar, counsel simply told Movant about the probable make-up of the jury, the likely sentencing outcome in both the jury and bench trial scenarios, and what counsel felt was the best route for Movant to take; no inappropriate or misleading information was given.

Finally, counsel in both *Browne* and *Bannon* were deemed ineffective because they waived their respective defendants' rights without informing the defendants of their rights in the first place. *Browne*, 220 A.D.2d at 314–15, 632 N.Y.S.2d 785; *Bannon*, 154 P.3d at 1173–76. Here, the motion court was presented with a plethora of credible evidence demonstrating that Movant was well aware of his right to trial by jury, including the testimony of both trial attorneys, Movant's written waiver of his right, and his own testimony before trial in open court. Thus, while it is clear that complete deprivation of the right to trial by jury is unacceptable, this case turns on Movant's voluntary, knowing, and intelligent waiver of that right.

After reviewing the entire record, this court is not left with a definite and firm impression that a mistake has been made by the motion court as to trial counsels' performance related to Movant's waiver of a jury trial. *Moss*, 10 S.W.3d at 511.

Therefore, the motion court's findings are not clearly erroneous. *Id.* Having found no error in the motion court's finding that Movant failed to sustain his burden of proving deficient performance by his counsel, we need not address Movant's arguments related to the prejudice prong of the *Strickland* test. *See Calvin v. State,* 204 S.W.3d 220, 223 (Mo.App.2006). Movant's first point is denied.

### *Details of Prior Conviction*

 Movant's second point asserts that trial counsel was ineffective for introducing into evidence through Movant's testimony at trial the details of Movant's prior aggravated assault conviction. Specifically, Movant argues that when trial counsel elicited the details of Movant's prior conviction, that he shot his mother's boyfriend in the leg when he attacked Movant with a knife, counsel introduced inadmissible evidence into the record, and thus prejudiced the trial court's decision finding Movant guilty. We disagree.

The calling of witnesses and presentation of evidence have long been considered matters of trial strategy. *State v. Taylor,* 779 S.W.2d 636, 645 (Mo.App.1989). When representing a defendant, counsel is expected to use his or her best judgment in such matters, and is thus given wide latitude in charting his or her strategic course. *State v. Williamson,* 877 S.W.2d 258, 262 (Mo.App.1994). Reasonable yet unsuccessful strategies "cannot be deemed ineffective." *State v. Dees,* 916 S.W.2d 287, 301 (Mo.App.1995). The issue in this case, then, is whether counsel's elicitation of specific details of Movant's prior aggravated assault conviction was unreasonable and, thus, improper trial strategy.

A defendant has an absolute right to testify on his or her own behalf. Section 546.260. In doing so, a defendant "shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case." *Taylor v. State,* 173 S.W.3d 359, 365 (Mo. App.2005). Thus, because any prior criminal conviction can be used to challenge the credibility of a witness, the same can be used to impeach a criminal defendant. Section 491.050; *Taylor,* 173 S.W.3d at 365. Consequently, a defendant has the option, in lieu of allowing the State to bring out the prior conviction on cross-examination, of disclosing such convictions during direct examination in order to lessen the impact of the conviction on his or her credibility. *Taylor,* 173 S.W.3d at 366. In fact, it has long been considered not only a matter of sound trial strategy for counsel to elicit prior convictions during direct examination, in order to pre-empt their disclosure on cross-examination, but "virtually unchallengeable, ... [and] a very common and wise practice." *Armstrong v. State,* 983 S.W.2d 643, 649 (Mo. App.1999) (citing *Hannah v. State,* 816 S.W.2d 1, 4 (Mo.App.1991)).

 As a general rule, when impeaching the credibility of a defendant with a prior criminal conviction, the prosecution may adduce "the nature of the charge, place and date of the occurrence, and the sentence imposed." *Id.* (citing *State v. Skelton,* 887 S.W.2d 699, 704 (Mo.App. 1994)). If a defendant makes statements for the purpose of mitigating the impact of a prior conviction, however, the trial court has the discretion to permit the prosecution "to test and challenge such statements by going into the details of the crime leading to a prior conviction." *Taylor,* 173 S.W.3d at 366 (citing *Skelton,* 887 S.W.2d at 704). Likewise, "[t]he extent of permissible explanation by defendant of the extenuating circumstances of his prior convictions and the facts pertaining to those convictions is a matter which best rests in

the discretion of the trial court." *State v. Lee*, 536 S.W.2d 198, 199 (Mo.App.1976).

In the instant case, Movant testified at trial that he had a heightened fear of knives as a result of an alleged attack on him by his mother's boyfriend, as well as another instance in which he was attacked with a knife. The former attack resulted in Movant's conviction for aggravated assault. During his questioning of Movant at trial, counsel elicited both the generalities of the conviction and more specific details as to the incident giving rise to the offense. The manner in which the details were elicited—through Movant's own explanation of why he is hypersensitive to knives—lends credence to the idea that they were offered in an attempt to blunt the stark reality of the conviction without explanation, and evidence presented at the evidentiary hearing further confirms that theory.

■ During the evidentiary hearing, counsel stated that he introduced the particulars of Movant's prior aggravated assault conviction because, as Movant was asserting self-defense in the case at hand, he felt the details were "more beneficial to [Movant] than just letting the fact of that—conviction for that type of offense lay there by itself." Such a statement is tantamount to an express declaration that counsel's strategy was to blunt the impact of the conviction alone by showing Movant not to be a prior aggressor, and to be especially sensitive to knives. While the strategy in hindsight was not successful, "[r]easonable choices of trial strategy, no matter how ill[-]fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001). Furthermore, even though it may have been equally reasonable to omit the details of Movant's prior conviction, "[i]t is not ineffective assistance of counsel for an attorney to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be a reasonable strategy." *Id.* at 207–08.

Movant further suggests that any alleged goal of making Movant appear sympathetic was "misguided," and that the details are, no matter what, more prejudicial than probative. We disagree. Movant conveniently fails to consider that the details elicited during trial encompassed both Movant's actions in shooting at his mother's boyfriend and his mother's ex-boyfriend's actions in coming at Movant with a knife. Movant also testified regarding another incident in which he was attacked with a knife, expressly demonstrating Movant's extra-sensitivity to knives. Taken together, these details do not necessarily show Movant to be "the type of person who would resort to deadly force to solve an argument and then later unsuccessfully attempt to excuse his illegal actions," as he suggests in his brief; rather, they could also portray Movant as an individual who responds to violence in due kind, and who may indeed have a heightened fear of being attacked, especially with a knife. Counsel's testimony at the evidentiary hearing confirms that such an image was indeed his goal; we cannot now fault him for not ultimately succeeding. There was ample evidence presented to the motion court to support the theory that the specificities of Movant's prior conviction were offered to blunt the effect of the conviction, which is a reasonable trial strategy, and the trial court did not clearly err in ruling that Movant had not met his burden of proof.

Movant's reliance on *Kenner v. State*, 709 S.W.2d 536 (Mo.App.1986); *Lyons v. McCotter*, 770 F.2d 529 (5th Cir.1985); and *Harrison v. Jones*, 880 F.2d 1279 (11th Cir.1989), is misplaced. First, these cases deal with trial counsel's failure to object to

the admission of improper prior-conviction evidence offered by the prosecution, which is not the case here. In this case, it was trial counsel who offered evidence of Movant's prior conviction, so there is no logical comparison. Second, these cases cited by Movant deal with strict propensity evidence, which is inadmissible by its nature; in the instant case, the evidence Movant now challenges was admissible, as it was offered in conjunction with statements intended to mitigate and ameliorate the effect of Movant's prior conviction.[4]

Thus, because the elicitation of the details of Movant's prior aggravated assault conviction was sound trial strategy, counsel's actions were not ineffective, and Movant was not denied his right to effective assistance of counsel. Movant's second point is denied.

### Decision

The judgment of the motion court denying Movant's motion for post-conviction relief is affirmed.

RAHMEYER and BURRELL, JJ., concur.

---

**4.** Movant further contends that counsel was ineffective for eliciting the details of Movant's prior conviction because those details were inadmissible evidence. However, the cases Movant relies upon in support of this argument stand for no such proposition; rather, they stand for the proposition that, when offered by the State, such details are inadmissi-ble barring certain exceptions. *See Kenner v. State*, 709 S.W.2d 536 (Mo.App.1986); *Lyons v. McCotter*, 770 F.2d 529 (5th Cir.1985); *Harrison v. Jones*, 880 F.2d 1279 (11th Cir. 1989). Movant cites to no authority espousing that such evidence is inadmissible if offered by a defendant, as was the case here.