

# Missouri Court of Appeals
## Southern District
### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD35936 |
| | ) | |
| LARRY A. SINOR, | ) | FILED: February 6, 2020 |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Jerry A. Harmison, Jr., Judge

**AFFIRMED**.

Larry A. Sinor ("Defendant") appeals his conviction, following a two-day jury trial, for the class A misdemeanor of careless and imprudent driving in violation of section 304.012, RSMo. (2000). Defendant asserts six points on appeal all requesting plain error review of the trial court's failure to *sua sponte* intervene to strike and exclude from evidence certain selected parts of the testimony given by the State's expert witness, Trooper Bonnie Talik. We deny those requests, decline to engage in plain error review, and affirm the trial court's judgment of conviction.

**Factual and Procedural Background**

On June 20, 2016, the semi-tractor driven by Defendant at 56 or 57 miles per hour in an

1

eastward direction in the right lane of Route OO collided with the rear of a hay rake being pulled by a farm tractor that was traveling in the same direction in the same lane at a top speed of 16 or 17 miles per hour. The driver of the farm tractor died as a result of the collision.

By information, the State charged Defendant with the class A misdemeanor of careless and imprudent driving alleging that Defendant

> operated a motor vehicle on a public highway known as Route OO, in a careless and imprudent manner by failing to keep a proper lookout and overtaking and striking a slower moving vehicle, and thereby endangered the property of another or the life and limb of any person and was at that time involved in an accident.

The State endorsed on the information, as a witness, Bonnie Talik of the Major Crash Investigation Unit of the Missouri State Highway Patrol, who was the lead investigator of the collision. Defendant's counsel took Trooper Talik's deposition before trial. Also before trial, Defendant endorsed and gave notice of his intent to call Dr. Bruce A. Kater, Neuro-Optometrist, as an expert witness. The State took Dr. Kater's pre-trial deposition.

At trial, Defendant was represented by public defenders Sarah Johnson and Rodney Hackathorn. During Defendant's opening statement, trial counsel Johnson described for the jury the anticipated battle of experts related to the "lookout" kept by Defendant in the following manner:

> You will hear testimony from Missouri Highway Patrol accident reconstructionist [Talik] that, according to her mathematical calculations, [Defendant] should have been able to stop his semi in time to avoid the collision. However, you will also hear that these mathematical calculations are not exact. They are based on a guess as to what speed the tractor was actually going. You will hear that without that critical piece of information, no one can definitively say at what point the tractor entered the road in front of [Defendant]. You will also hear that, without knowing the tractor's speed, there's no way to calculate how quickly [Defendant's] semi reached the tractor.
>
> So could there have been something else going on? Well, you'll hear from Dr. Bruce Kater, our neuro optometrist from Mercy Hospital, that there's a phenomenon called the looming effect; or, as the Federal Aviation Administration calls it, a blossom effect. You will hear Dr. Kater explain that this phenomenon is

2

based on how quickly an image expands on the retina, or the nerve portion on the back of the eye. You will hear that this phenomenon occurs when two objects are closing in, whether head on or from behind, and that it affects the -- the brain's ability to recognize you're on a collision course. You will hear testimony that the FAA calls this the blossom effect, because the approaching image goes from an imperceptible increase in size to an explosion in the field of vision. You will hear testimony that at that critical point, the brain must process the visual information, formulate a plan, and put it into motion. Failure at any level leads to disaster, and seconds count.

The trial transcript of the two-day trial indicates that a substantial portion of the testimony came from Trooper Talik and Dr. Kater. Of the 193 pages of trial testimony in the transcript, Trooper Talik's testimony covered 81 pages (46 for direct and 35 for cross-examination) and Dr. Kater's testimony covered 76 pages (59 for direct and 17 for cross-examination). Nothing in the transcript indicates that Trooper Talik's testimony differed from that given in her pre-trial deposition taken by trial counsel or surprised trial counsel in any manner. Neither of Defendant's trial counsels made an objection to any of Trooper Talik's testimony.

A substantial portion of Defendant's closing argument, made by trial counsel Johnson, attacked various factual underpinnings of Trooper Talik's testimony, promoted the accuracy of Dr. Kater's testimony as to the "looming effect and perception-reaction times," and criticized Trooper Talik's testimony for not taking those into account. In addition, trial counsel compared and contrasted the credentials of Trooper Talik and Dr. Kater emphasizing the deficiencies of the former and superior qualities of the latter.

After deliberating for 24 minutes, the jury returned a guilty verdict. Defendant filed a motion for new trial, but no claim of trial court error was raised in that motion as to any part of Trooper Talik's testimony. The trial court denied Defendant's motion for new trial and sentenced Defendant to serve 180 days in the Greene County Jail, but suspended the execution of that sentence and placed Defendant on two years of unsupervised probation with the condition

3

that he serve four days of shock detention in the Greene County Jail.  This appeal timely followed.

## Discussion

Defendant concedes that none of his six claims of trial court error were preserved for appellate review by a timely and proper objection and inclusion in Defendant's motion for new trial.  Rather, Defendant requests Rule 30.20 plain error review of the trial court's failure to *sua sponte* intervene to strike and exclude from evidence five different conclusions testified to by Trooper Talik and, in his sixth point relied on, "the cumulative prejudicial effect" from the errors challenged in the other five points relied on.[1]  Defendant claims that he was denied his right to a fair trial because each challenged conclusion testified to by Trooper Talik "invaded the province of the jury."

"Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved."  ***State v. Campbell***, 122 S.W.3d 736, 739 (Mo.App. 2004).  "[A]n appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion."  ***Id.*** at 740.  "The court may simply decline to exercise its discretionary authority to review the point for plain error."  ***Shifkowski v. State***, 136 S.W.3d 588, 590 (Mo.App. 2004).[2]

If we exercise our discretion and engage in the requested plain error review of unpreserved error, a "defendant must show not only that the trial court committed evident,

---

[1] All rule references are to Missouri Court Rules (2019).
[2] Rule 30.20 provides, in pertinent part, that "Whether briefed or not, plain errors affecting substantial rights *may be considered in the discretion of the court* when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.  Rule 30.20 (emphasis added).  Nothing in that rule makes a request from a party a prerequisite for the exercise of a court's discretion to engage in plain error review.  *See, e.g.*, ***State v. Kimes***, 234 S.W.3d 584, 590 (Mo.App. 2007) (*sua sponte* found plain error in trial court's imposition of jail sentence for infraction where only authorized punishment was a fine).  Conversely, nothing in that rule requires a court to engage in any type of plain error review merely because a party requests it to do so.

obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice." *State v. Stuckley*, 573 S.W.3d 766, 768 (Mo.App. 2019).

Here, having reviewed and considered the record on appeal, the parties' briefs, and the alleged trial errors for which plain error review is requested, Defendant has failed to persuade us that we should exercise our discretion to engage in plain error review. Moreover, we find nothing in the record on appeal warranting the exercise of our discretion to engage in plain error review. We, therefore, deny Defendant's requests for plain error review and decline to exercise our discretionary authority to review Defendant's six points for plain error.

## Decision

The trial court's judgment is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS